1
2
3
4
5
6
7

FILED & ENTERED

MAR 03 2026

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gasparia  DEPUTY CLERK

8

**UNITED STATES BANKRUPTCY COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

**SAN FERNANDO VALLEY DIVISION**

11
12

| | |
|---|---|
| In re: | Case No.: 1:24-bk-11300-VK |
| ANUSH ARAKELYAN, | Chapter 7 |
| | Adv. No.: 1:25-ap-01065-VK |
| Debtor. | **MEMORANDUM OF DECISION DENYING DEBTOR'S MOTION TO SET ASIDE DEFAULT JUDGMENT** |
| DAVID GOTTLIEB, | |
| Plaintiff, | Hearing: |
| vs. | Date:  February 19, 2026 |
| | Time:  2:00 p.m. |
| ANUSH ARAKELYAN, | Place:  Courtroom 301 |
| | 21041 Burbank Blvd. |
| Defendant. | Woodland Hills, CA 91367 |

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

On October 6, 2025, David. K. Gottlieb, in his capacity as the chapter 7 trustee in the above-captioned bankruptcy case, filed a complaint against the debtor Anush Arakelyan ("Debtor") seeking to deny her chapter 7 bankruptcy discharge pursuant to 11 U.S.C. § 727(a)(2)(B) and (a)(4)(A) (the "Complaint").

On November 10, 2025, Mr. Gottlieb filed a "Request for Entry of Default" ("Default Request") [doc. 5]. On November 12, 2025, the court clerk entered default against Debtor [doc. 8].

On January 28, 2026, Debtor filed a motion to set aside the default (the "Motion") [doc. 20]. For the reasons discussed below, the Court will deny the Motion.

## I.    BACKGROUND

### A.  Debtor's Bankruptcy Schedules and Statement of Financial Affairs

On August 7, 2024, Debtor filed a chapter 11 petition, initiating bankruptcy case no. 24-bk-11300 (the "Bankruptcy Case"). In her petition, Debtor stated that she lives at 5235 ½ Ben Avenue, Valley Village, CA 91607 and that her mailing address is 12400 Ventura Blvd. #749, Studio City, CA 91604.[1] When Debtor filed her petition until January 14, 2025, Debtor was represented by bankruptcy counsel, Thomas B. Ure.[2]

In Debtor's schedule A/B, filed in August 2024, and in her amended schedule A/B, filed in September 2024, Debtor represented that she holds a fee simple interest in the following properties: (1) a single-family residence located at 8008 Wilkinson Avenue, North Hollywood, CA 91605, for which Debtor provided a value of $1 million ("Wilkinson Avenue Property"); and

---

[1] 12400 Ventura Boulevard, Studio City, CA 91604 is the address of a mailbox center. Debtor never has filed a notice for a change in her mailing address with the Court.

[2] On January 14, 2025, the Court entered an order granting Mr. Ure's motion to withdraw as counsel to Debtor [doc. 91 in Bankruptcy Case].

(2) a four-unit apartment building located at 5233-5235 Ben Avenue, Valley Village, CA 91607, for which Debtor provided a value of $1,830,000 ("Ben Avenue Property") [docs. 1 and 30 in Bankruptcy Case]. In her schedule A/B and amended schedule A/B, Debtor further represented that she is the only person who holds a fee simple interest in each of these properties.[3]

In Debtor's schedule I and the attachment to that schedule, Debtor states that she receives $4,500.00 in rental income from the Wilkinson Avenue Property and "all utilities and maintenance [are] paid by tenant." [doc. 1 in Bankruptcy Case]. As to the Ben Avenue Property, Debtor states that she receives $5,500.00 in rental income, in the aggregate, from 3 units. *Id.* With her original schedules, Debtor filed a "Declaration About an Individual Debtor's Schedules," which Debtor signed. In that declaration, Debtor states that she has read the summary and schedules filed with the declaration and that they are true and correct [doc. 1 in Bankruptcy Case].

In her statement of financial affairs, filed on August 7, 2024, Debtor states that she is married and has lived in the same place for the last 3 years [doc. 1 in Bankruptcy Case]. In her amended statement of financial affairs, filed on September 19, 2024, Debtor sets forth the rental income which Debtor has received from the Wilkinson Avenue Property from January 1, 2022 until the date she filed for bankruptcy [doc. 36 in Bankruptcy Case].

**B. Debtor's Additional Representations Made under Oath in August and September 2024**

**1. Debtor's Chapter 11 Case Status Report**

On August 27, 2024, the Court entered an Order setting a chapter 11 case status conference [doc. 20 in Bankruptcy Case]. On September 17, 2024, Debtor filed a Status Report

---

[3] In her schedule C, Debtor claimed a homestead exemption for the Ben Avenue Property in the amount of $699,421.00 [doc. 1 in Bankruptcy Case].

and Debtor's declaration in support of the Status Report (the "DIP Declaration") [doc. 29 in

Bankruptcy Case]. The Status Report states:

> Debtor Anush Arakelyan is married. Debtor and her spouse are both retired. Debtor and her husband's primary source of income is from rental income and Debtor's social security income. Debtor's spouse plans to also apply for social security.

> **Debtor is the owner of two pieces of real property.**

> The first property is a 4 unit residential building located at 5233 Ben Avenue, Valley Village, CA 91607. **Debtor and her spouse live in one unit** and the other three units are rented for a combined monthly total rental income of $5,500.00. Debtor believes the value of the Property is approximately $1,830,000.00. Debtor has a 1st Trust Deed with an approximate balance of $925,700.00.

> The second property is a Single Family Residence located at 8008 Wilkinson Ave., North Hollywood, CA 91605. The property is occupied by Debtor's brother and he pays $4,500.00 per month in rent and he also pays for all the utilities and maintenance for the property. Debtor believes the value of the property is $1,000,000.00. Debtor has a 1st Trust Deed with an approximate balance of $56,000.00 and a 2nd Trust Deed with an approximate balance of $240,000.00.

Status Report, p. 1 (emphases added) [doc. 29 in Bankruptcy Case].

In the DIP Declaration, Debtor states the following:

> I, Anush Araklyan [sic] declare:

> I know the following facts to be true from my own personal knowledge, except those facts which are stated on information and belief and as to those facts I believe them to be true. I could and would competently testify under oath to the truthfulness of the following facts:

> 1. I am the Debtor in this pending case. As such, I have personal knowledge of the facts stated herein, and if call upon to testify thereto, I could and would do so competently and truthfully.

> [. . .]

> 3. I have read the foregoing Status Report and the same is true and correct to the best of my knowledge.

> [. . .]

5. Attached hereto, marked Exhibit B, is a projection of my income and expenses for the first six months of my case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and complete to the best of my knowledge. Executed in Los Angeles, on this 17th day of September, 2024.

DIP Declaration [doc. 29].

**2. Debtor's Cash Collateral Motion**

On September 19, 2024, Debtor filed a motion to use cash collateral and her declaration in support of that motion [doc. 34 in Bankruptcy Case]. Debtor signed that declaration. *Id*. In that motion, Debtor requests Court authority to use rents generated from the Wilkinson Avenue Property to pay her expenses during the Bankruptcy Case. Debtor estimates that the value of the Wilkinson Avenue Property is $936,300 and that the property generates $4,500 in income each month. *Id*.

In her declaration filed in support of the cash collateral motion, Debtor states:

I, <u>Anush Arakelyan</u>, declare:

1. I am the Debtor in this bankruptcy case.

2. The facts asserted in this declaration are of my own personal knowledge.

3. **I am the owner of the Collateral**.

[. . .]

5. The value of the Collateral, the amounts of the claims secured by the respective liens thereon, and the equity in the Collateral, in Exhibits A are true and correct. The value of the property is estimated based on my personal knowledge of the property, its current condition, comparable sales in the area as well as the amount of income the properties are currently generating.

6. [. . .] The income and expenses listed in the proposed budgets are true and correct.

[. . .]

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Exhibit A to Debtor's declaration includes Debtor's equity calculations for the Wilkinson Avenue Property [doc. 34 in Bankruptcy Case].

### C.  The Conversion of the Bankruptcy Case to One Under Chapter 7

On December 5, 2024, after holding two hearings on an order to show cause why the Bankruptcy Case should not be dismissed or converted, the Court entered an order converting the Bankruptcy Case to a case under chapter 7 [doc. 77 in Bankruptcy Case]. Mr. Gottlieb was appointed as chapter 7 trustee (the "Trustee").

Regarding its decision to convert the Bankruptcy Case to one under chapter 7, the Court explained:

> It appears that Debtor is intent on concealing her income and monthly expenses, including the postpetition payment of her secured debt, from the Court and creditors of the estate. Such conduct constitutes cause to convert or dismiss this case, including gross mismanagement of the estate and failure to satisfy timely the reporting requirements for [monthly operating reports].
>
> Given that there appears to be approximately $572,000 in unexempt equity in the Wilkinson [Avenue] Property, conversion is in the best interest of creditors and the estate.

Doc. 75 in Bankruptcy Case.

On January 13, 2025, the Trustee held a meeting of creditors. Declaration of David K. Gottlieb ("Gottlieb Decl."), ¶ 7 [doc. 99 in Bankruptcy Case]. During that meeting of creditors, the Trustee requested that Debtor produce (1) the rent rolls, purchase contract, most current loan statement, last tax return filed, copy of the deed, statement of insurance, and insurance documentation listing Trustee as an additional insured or loss payee for the Ben Avenue Property; and (2) the purchase contract, most current loan statement, copy of the loan agreement, copy of the deed, and statement of insurance, and insurance documentation listing Trustee as an

additional insured or loss payee for the Wilkinson Avenue Property (collectively, the "Requested Documents"). *Id*. The Trustee then continued the meeting of creditors to February 13, 2025, at 10:30 a.m. to allow Debtor additional time to produce the Requested Documents. *Id*.

On February 13, 2025, the Trustee held a continued meeting of creditors. During the continued meeting of creditors, the Trustee again requested that Debtor produce the Requested Documents, which Debtor did not produce prior to the continued meeting of creditors. Gottlieb Decl., ¶ 8. The Trustee then continued the meeting of creditors to March 19, 2025, at 10:30 a.m. to allow Debtor additional time to produce the Requested Documents. *Id*.

On March 19, 2025, the Trustee again held a continued meeting of creditors. During the continued meeting of creditors, the Trustee requested that Debtor produce the Requested Documents, which Debtor still had not produced. Gottlieb Decl., ¶ 9.

During the continued 341(a) meeting of creditors held on March 19, 2025, Debtor testified that she is separated from her husband and that he currently resides in the Wilkinson Avenue Property and has resided there since no later than 2017. Gottlieb Decl., ¶ 10. These assertions contradict what Debtor stated in the Status Report, which is supported by Debtor's testimony, under penalty of perjury, in the DIP Declaration.

In June 2025 and August 2025, the Trustee and Debtor entered into stipulations to extend the deadline for the Trustee to file a complaint against Debtor under 11 U.S.C. § 727. Debtor signed these stipulations [docs. 121 and 137 in Bankruptcy Case].

On October 6, 2025, the Trustee filed the Complaint. Attached as exhibits to the Complaint are a Homestead Declaration. signed by Mr. Arakelyan, filed with the Los Angeles County Recorder's Office on May 6, 2025, and a QuitClaim Deed, signed by Debtor, filed with the Los Angeles County Recorder's Office on July 24, 2025.

On October 13, 2025, the Trustee had the Complaint served on Debtor by U.S. mail, first class, postage prepaid with an issued "Summons and Notice of Status Conference in Adversary Proceeding [LBR 7004-1]" (the "Summons").

The first paragraph of the Summons, on the first page, states:

> TO THE DEFENDANT(S): A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You also much serve a copy of your written response on the party shown in the upper left-hand corner of this page. The deadline to file and serve a written response is **11/06/2025**. If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

Summons [doc. 4] (emphasis in original).

On October 13, 2025, the Trustee filed a proof of service stating that the Complaint, the Summons and related documents were served on Debtor at her mailing address of record: 12400 Ventura Blvd, #749, Studio City, CA 91604 ("Studio City Address") [doc. 4]. Pursuant to Federal Rule of Bankruptcy Procedure ("Rule") 7004(b)(9), the Complaint and Summons were properly served on Debtor.

### D.  The Trustee's Section 727 Claims Against Debtor

The Complaint asserts that Debtor is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(2)(B) and (4)(A). The Complaint discusses Debtor's testimony at the March 19, 2025 meeting of creditors and what took place following the meeting of creditors.

As to the events following the March 19, 2025 meeting of creditors, the Complaint makes the following allegations:

> In April 2025, after Debtor testified at the March 19, 2025 meeting of creditors that her spouse, Walter Arakelyan, aka Vartan Arakelyan, had not lived with her in a unit at the Ben Property since 2017, and instead resided in the Wilkinson Avenue Property, Mr. Ararkelyan sent an email to the Trustee's counsel with his contact information. Subsequently, the Trustee's counsel and Mr. Arakelyan met several times at the office of the Trustee's counsel to discuss a settlement agreement that

would obviate the Trustee's need to seek turnover of and sell the Wilkinson Avenue Property. The Trustee's counsel also had multiple telephone calls with Mr. Arakelyan about this.

On or around May 6, 2025, Mr. Arakelyan recorded a homestead declaration regarding the Wilkinson Avenue Property with the Los Angeles County Recorder's Office.

On or around July 22, 2025, Debtor executed a Quitclaim Deed to quitclaim "to Walter Arakelyan, a married man, as his sole and separate property" the Wilkinson Avenue Property (the "Deed"). The Deed was recorded with the Los Angeles County Recorder's Office on July 24, 2025.

On September 10, 2025, the Trustee held a continued meeting of creditors via Zoom, during which Debtor appeared and testified that: (1) she recognized the Deed (which was presented to her on the Zoom screen); (2) she signed the Deed; (3) she had her signature on the Deed notarized; and (4) she reviewed the Deed before she signed it.

The first cause of action in the Complaint asserts that Debtor is not entitled to a chapter 7 discharge under § 727(a)(2)(b) because she transferred the Wilkinson Avenue Property to her spouse, Mr. Arakelyan, after the petition date, with the intent to hinder or delay the Trustee.[4]

The second cause of action in the Complaint asserts that Debtor is not entitled to a chapter 7 discharge under § 727(a)(4)(A) because she knowingly and fraudulently, in connection with the Bankruptcy Case, made a false oath or account. In the Complaint, the Trustee alleges that Debtor made a false oath regarding Mr. Arakelyan's place of residence "to manufacture a homestead exemption by Mr. Arakelyan in the Wilkinson Avenue Property, to the detriment of the Trustee and the estate." As alleged by the Trustee, Debtor's testimony regarding the Wilkinson Avenue Property also is designed to conceal rental income from the Wilkinson

---

[4] The Complaint notes the following badges of fraud: (1) a close relationship between the transferor and the transferee, i.e., Debtor and her husband; (2) the transfer was in anticipation of an action for partition, turnover and sale of the Wilkinson Avenue Property, which the Trustee's counsel had previewed to Mr. Arakelyan during their discussions; (3) Debtor was insolvent or in poor financial condition at the time of the transfer; (4) given the claimed exemption and secured debt against the Ben Avenue Property, Debtor's equity in the Wilkinson Avenue Property is effectively the only valuable asset of the estate; and (5) the transfer of the Wilkinson Avenue Property completely depleted the available assets for distribution to unsecured creditors by the Trustee. *See In re Retz*, 606 F.3d 1189, 1200 (9th Cir. 2010) (discussing badges of fraud which may support finding of fraudulent intent).

-9-

Avenue Property, which rental income Debtor previously disclosed in her schedule I, her amended statement of financial affairs, the DIP Declaration and Debtor's motion to use cash collateral.

### E.  Trustee's Request for Entry of Default

Debtor's deadline to file and serve a response to the Complaint was November 6, 2025 [doc. 4]. On November 10, 2025, the Trustee filed the Default Request. On November 12, 2025, the court clerk entered default against Debtor. On November 14, 2025, the Bankruptcy Noticing Center mailed the "Notice that Clerk Had Entered Default" to Debtor at the Studio City Address [doc. 9].

### F.  Debtor's Motion to Set Aside Default

On January 28, 2026, Debtor filed the Motion. Debtor contends that she responded promptly after she became aware of the Complaint, i.e., by requesting a 30-day extension of time to file a response to the Complaint on November 11, 2025, and that Debtor has a meritorious defense to the Trustee's claims.

#### 1.  Debtor's Oath Made at the March 19, 2025 Meeting of Creditors About Where Her Husband Resides

In contrast to Debtor's prior statement in the Status Report (supported under penalty of perjury by the DIP Declaration) that Debtor and her husband live in a unit in the Ben Avenue Property, in Debtor's declaration filed in support of the Motion ("Debtor's 2026 Declaration"), Debtor represents that she and her husband "have separate residences." Debtor's 2026 Declaration, ¶ 4 [doc. 20]. In Debtor's 2026 Declaration, Debtor states: "I live in the property on Ben Avenue and Walter lives in the property on Wilkinson. I live alone and Walter lives with my

brother and his wife in the Wilkinson property." *Id*. Debtor further represents that she and her husband separated "in or about the end of 2006." *Id*.[5]

## 2. Debtor's Postpetition Transfer of the Wilkinson Avenue Property to Her Husband

In Debtor's 2026 Declaration, Debtor admits that she executed and delivered a quitclaim deed transferring the Wilkinson Avenue Property to Mr. Arakelyan (the "Deed") postpetition. Debtor's 2026 Declaration, ¶¶ 10-11; *see also* Exhibit 2 to the Complaint [doc. 1]. Debtor also states:

> During the course of my bankruptcy, the Trustee met with Walter to discuss resolution of the Trustee's claims against Walter. I was never part of any communication between the Trustee and Walter. From what Walter told me, the Trustee wanted approximately $36,000 to settle those claims and that he and the Trustee's attorneys discussed how Walter would be able to secure the funds to pay the Trustee. . . .

Debtor's 2026 Declaration, ¶ 9.

Debtor represents that she understood that her husband had reached an agreement with the Trustee about refinancing the Wilkinson Avenue Property, that her husband told Debtor that he would meet further with the Trustee's attorneys before undertaking the refinancing and that is why Debtor signed the Deed. *Id*., ¶¶ 9-10. As stated by Debtor, "[t]he postpetition quitclaim was not only an effort to secure funds to pay the Trustee . . . , but to remove my name from the property so funding could be obtained to pay the Trustee and to place title in Walter's Americanized name as he had attempted to do so for many years." *Id*., ¶ 11.

---

[5] Assuming that Debtor is truthfully testifying that she and her husband legally separated in 2006, Debtor has not testified that any such separation lasted continuously after 2006 and resulted in Mr. Arakelyan having a separate residence from Debtor in the Wilkinson Avenue Property.

Debtor further alleges that although she executed the Deed in July 2025, previously she had transferred her interest in the Wilkinson Avenue Property to Mr. Arakelyan "in or about" 2007; that deed was not recorded. *Id*., ¶ 6.

Debtor's contention that she had previously transferred her interest in the Wilkinson Avenue Property to her husband is contrary to the representations which Debtor made in her schedule A and in her amended schedule A, both filed in 2024, that Debtor is the sole owner of a fee simple interest in the Wilkinson Avenue Property [docs. 1 and 30 in Bankruptcy Case]. Moreover, in pleadings Debtor filed while Debtor was a debtor in possession, and represented by bankruptcy counsel, Debtor consistently represented that the Wilkinson Avenue Property and the rents which it generates are property of the estate.

### 3.   Debtor's Explanation for Not Filing a Response to the Complaint

Regarding the Motion, Debtor has represented that, in or about June 2024, after two battles with Covid, she became very ill, and she rarely goes out of the house. Debtor's 2026 Declaration, ¶¶ 4 and 12. Debtor states: "I was unaware that the Trustee had served me with the Complaint until my daughter went to the post office box to pick up an item she ordered that was to be delivered there." Debtor's 2026 Declaration, ¶ 12. Debtor does not state the date on which she became aware of the Trustee's filing and service of the Complaint.

In his declaration filed in support of the Motion, Walter Arakelyan represents that his daughter called him "on or about" November 5, 2025 and advised him that Debtor had been sued by the Trustee. Declaration of Walter Arakelyan, ¶ 3 (the "Walter Decl.") [doc. 20]. Mr. Arakelyan represents that he was out of state at that time. Mr. Arakelyan states that, on November 6, 2025, he went to the self-help desk at the Court's location in Woodland Hills, met

with an attorney there and showed the attorney the Complaint. *Id*. Mr. Arakelyan further states, "It was recommended that [Debtor] contact the Trustee and request a continuance." *Id*.

After the deadline to file a response to the Complaint, Debtor requested that the Trustee provide an extension of 30 days for Debtor to do so. Attached as Exhibit A to the Debtor's 2026 Declaration is an email from Debtor, addressed to counsel for the Trustee, requesting a 30-day extension. The email is dated November 11, 2025 [doc. 20].[6] On November 10, 2025, before the date of this email, the Trustee had filed the Default Request [doc. 5].

On February 6, 2026, Trustee filed an opposition to the Motion and evidentiary objections to Debtor's 2026 Declaration and the Walter Decl. [docs. 33 and 34]. On February 9, 2026, Debtor filed a reply and her response to the evidentiary objections [docs. 36 and 37].

## II.     LEGAL STANDARDS

Pursuant to Rule 7055, Federal Rule of Civil Procedure ("FRCP") 55 applies to adversary proceedings. Under FRCP 55(c), "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under [FRCP] 60(b)."

> To determine "good cause", a court must "consider[ ] three factors: (1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default judgment would prejudice" the other party. This standard, which is the same as is used to determine whether a default judgment should be set aside under Rule 60(b), is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default.

*United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (alterations in original; internal citations omitted).

---

[6] In this email, in requesting a 30-day extension of time to file a response to the Complaint, Debtor represents: "After my second chemotherapy very severe weakness and dizziness overtakes my whole body which sometimes lasts a couple of months." Ex. A to Debtor's 2026 Declaration [doc. 20]. Debtor has not provided any documentary evidence of Debtor having had chemotherapy or any illness which precludes Debtor from going to the Studio City Address to get mail or timely filing a response to the Complaint.

As a defaulting party invoking FRCP 55(c), Debtor bears the burden of demonstrating that these factors favor obtaining relief from her default. *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001), overruled on other grounds by *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001) (emphasis in original). A court's denial of a FRCP 55(c) motion is reviewed for abuse of discretion. *Mesle*, 615 F.3d at 1091; *Franchise Holding, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 925 (9th Cir. 2024) ("We review the district court's factual findings for clear error and, if those findings are not clearly erroneous, we review the court's decision to deny [movant's] Rule 55(c) motion for abuse of discretion.").

### A. Culpable Conduct

A defendant's conduct is culpable if she has "received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *TCI Group*, 244 F.3d at 697 (emphasis in original).

As explained by the Ninth Circuit Court of Appeals:

> the term "intentionally" means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an "intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process." We have "typically held that a defendant's conduct was culpable for purposes of the [good cause] factors where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." . . . [I]t is clear that simple carelessness is not sufficient to treat a negligent failure to reply as inexcusable, at least without a demonstration that other equitable factors, such as prejudice, weigh heavily in favor of denial of the motion to set aside a default.

*Mesle*, 615 F.3d at 1092-93 (internal citations omitted). Examples of behavior which the Ninth Circuit Court of Appeals has held to be culpable include "conduct by parties that is calculated to help them retain property in their possession, and avoid liability by staying out of court." *Mesle*, 615 F.3d at 1094.

In assessing culpability, a court may consider "the defaulting party's general familiarity with legal processes or consultation with lawyers at the time of the default as pertinent to the determination whether the party's conduct in failing to respond to the legal process was deliberate, willful or in bad faith." *TCI Group*, 244 F.3d at 699. As further explained by the Court of Appeals in *TCI Group*:

> Absent some explanation . . ., it is fair to expect that individuals who have previously been involved in litigation or consulted with a lawyer appreciate the consequences of failing to answer and do so only if they see some advantage to themselves. We have not held, however . . . that legal sophistication or lack thereof is determinative of whether the culpability standard is met.

*Id.*

## B.  Meritorious Defense

> "A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense. But the burden on a party seeking to vacate a default judgment is not extraordinarily heavy." All that is necessary to satisfy the "meritorious defense" requirement is to allege sufficient facts that, if true, would constitute a defense: "the question whether the factual allegation [i]s true" is not to be determined by the court when it decides the motion to set aside the default. Rather, that question "would be the subject of the later litigation."

*Mesle*, 615 F.3d at 1094 (quoting *TCI Group*, 244 F.3d at 700; internal citations omitted).

### 1.  The Provisions of 11 U.S.C. § 727(a)(2)(B)

11 U.S.C. § 727(a)(2)(B) provides that the court shall grant the debtor a discharge, unless:

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
> [. . .]
>
> B. property of the estate, after the date of the filing of the petition[.]

-15-

In order for a party to establish the elements under § 727(a)(2)(B), the party must show: "(1) [t]here must be a transfer of property; (2) [i]t involves property of the estate; (3) [t]he transfer occurred after the filing of the petition; [and] (4) [t]he debtor had, at the time of the transfer, an intent to hinder, delay, or defraud a creditor [or a chapter 7 trustee]." *In re Choy*, 569 B.R. 169, 181 (Bankr. N.D. Cal. 2017) (internal citation and quotations omitted).

Section 727(a)(2)(B) does not require that the debtor "*intend* to transfer property of the estate. Instead, § 727(a)(2)(B) simply calls for a transfer of property of the estate, and that [the debtor] accomplish this transfer with an intent to hinder, delay or defraud. These are two separate elements which cannot be intertwined." *Id*. at 182.

### 2.    The Provisions of 11 U.S.C. § 727(a)(4)(A)

11 U.S.C. § 727(a)(4)(A) provides that "[t]he court shall grant the debtor a discharge, unless—(4) the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account." "The fundamental purpose of § 727(a)(4)(A) is to ensure that the trustee and creditors have accurate information without having to conduct costly investigations." *In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010) (internal quotations and citations omitted).

To bring a successful objection to chapter 7 discharge on grounds of false oath, "a plaintiff must show, by a preponderance of the evidence, that (1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." *Retz*, 606 F.3d at 1197.

"A fact is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence or disposition of the debtor's property." *Id*. at 1198 (internal citations and quotations omitted). "An omission or misstatement that detrimentally affects administration of the estate is material." *Id*. (internal

citations and quotations omitted). "A debtor acts knowingly if he or she acts deliberately or consciously." *Id.* (internal citations and quotations omitted).

To establish "fraudulent intent" pursuant to 11 U.S.C. § 727(a)(4)(A) a plaintiff must show that (1) the debtor made the representation, (2) at the time the debtor knew it was false, and (3) the debtor made the statement with the intention and purpose of deceiving creditors. *Id.* at 1198-99. Intent is usually proven by circumstantial evidence or inferences drawn from the debtor's conduct. *Id.* at 1199.

### C. Prejudice

To be prejudicial, setting aside a judgment "must result in greater harm than simply delaying resolution of the case." *TCI Group*, 244 F.3d at 701 (citing *Falk*, 739 F.2d at 463). Rather, "the standard is whether [plaintiff's] ability to pursue his claim will be hindered." *Id.*

### III.    ANALYSIS

An adverse finding to Debtor with respect to any of the relevant factors "is sufficient reason for the [court] to refuse to set aside the default." *Mesle*, 615 F.3d at 1091. As discussed below, under the applicable standards and factors, the Court's refusal to set aside Debtor's default is warranted.

First, the Court holds that Debtor's conduct is culpable. The Court finds that Debtor intentionally, in bad faith, failed to file a response to the Complaint before the Trustee filed the Default Request. Debtor's delayed request for an extension of time from the Trustee, her failure to file an answer to the Complaint when due or subsequently, Debtor's failure, as a debtor in possession, to provide accurate information regarding the income generated postpetition by the Wilkinson Avenue Property and the actions Debtor has taken to delay and hinder the Trustee

from administering the Wilkinson Avenue Property and its rental income, e.g., her failure to provide the Requested Documents to the Trustee, are representative of Debtor's bad faith.

Second, as to the cause of action for making a false oath under 11 U.S.C. § 727(a)(4) (A), Debtor has not met the minimal burden required to establish a meritorious defense to the Complaint.

### A.  Culpable Conduct

On October 13, 2025, the Trustee properly served Debtor with the Complaint and Summons at Debtor's identified mailing address [doc. 4 in Bankruptcy Case]. No later than November 5, 2025, and likely before then, Debtor received actual notice of the Trustee's service of the Complaint and Summons and the November 6th deadline to file a response to the Complaint.

Debtors in bankruptcy cases have a continuing duty to inform the Court, and other parties in interest, if their mailing address changes during the course of their case. See Rule 4002(a) ("[A] debtor must [. . .] file a statement of change in the debtor's address.").

Debtor has not identified the date on which *Debtor* learned of the Trustee's filing and service of the Complaint and Summons. Debtor merely states that Debtor learned about the service of the Complaint from her daughter, when her daughter went to the Studio City Address.

Debtor argues that her alleged illness prevents Debtor from timely monitoring the delivery of mail at the Studio City Address. In her declaration, Debtor contends that she has been ill for many years. Debtor's 2026 Declaration, ¶ 4. Nonetheless, when Debtor filed her chapter 11 petition (while Debtor had the assistance of bankruptcy counsel), Debtor elected to receive pleadings which were filed in the Bankruptcy Case at the Studio City Address.

In 2025, Debtor entered into two stipulations with the Trustee to extend the deadline for the Trustee to file the Complaint. The contents of Debtor's 2026 Declaration and the Walter Decl. indicate that Debtor learned of the Trustee's service of the Complaint and Summons before November 6, 2025, and needlessly delayed seeking a 30-day extension of time to respond to the Complaint until *after* the Trustee filed the Default Request.

The Court holds that Debtor's conduct in failing to file a timely response to the Complaint was in furtherance of Debtor's intention to prevent creditors from gaining access to the nonexempt equity in, and rents generated by, the Wilkinson Avenue Property, is in bad faith and is culpable.

### B. Meritorious Defense

For the Court to deny Debtor's chapter 7 discharge, the Trustee must prevail on one of the claims under § 727(a) asserted in the Complaint; the Trustee need not prevail on both of the asserted claims under § 727.

Denial of discharge claims are "to be construed liberally in favor of debtors and strictly against the objector." *In re Devers*, 759 F.2d 751, 754 (9th Cir. 1985). "However, only honest debtors deserve a bankruptcy discharge and a fresh start." *Hopkins v. Hughes (In re Hughes)*, 349 B.R. 72, 78 (Bankr. D. Idaho 2006).

### 1. Whether Debtor Has Set Forth a Meritorious Defense under 11 U.S.C. § 727(a)(2)(B)

For the Court to deny a chapter 7 discharge under 11 U.S.C. § 727(a)(2)(B), the Trustee must establish: (1) a transfer, (2) of property of the estate, (3) which occurred after the filing of the petition, and (4) the debtor had, at the time of the transfer, an intent to hinder, delay or defraud. *Choy*, 569 B.R. at 181.

### a. Debtor Transferred the Wilkinson Avenue Property Postpetition

Debtor admits that, in 2025, Debtor executed and delivered the Deed; the Deed transferred the Wilkinson Avenue Property to Mr. Arakelyan, "a married man, as his sole and separate property." Debtor's 2026 Declaration, ¶ 10; Exhibit 2 to the Complaint.

### b. The Wilkinson Avenue Property Is Property of the Estate

In her schedules and statement of financial affairs filed with the Court, Debtor states that she is the sole owner of a fee simple interest in the Wilkinson Avenue Property and represents that the rents from that property constitute her income. In the Status Report and the DIP Declaration, Debtor also represented that she is the owner of that property and the rents.

Debtor's subsequent, recent representations that Mr. Arakelyan has owned the Wilkinson Avenue Property since at least 2007, pursuant to an unrecorded deed, entirely conflict with prior sworn statements which Debtor made to the Court. Under oath, Debtor previously represented that she: (1) owned the Wilkinson Avenue Property; (2) was qualified to offer an opinion about the current value of that property; and (3) should be authorized to use the rents generated by that property in the Bankruptcy Case.

### c. Debtor's Intent to Hinder or Delay the Trustee's Administration of the Estate

As concerns the Motion, Debtor has raised a sufficient defense regarding her lack of intent to hinder or delay the Trustee when she signed the Deed to transfer the Wilkinson Avenue Property to her husband. During a continued meeting of creditors, Debtor acknowledged that she had signed the Deed.

In Debtor's 2026 Declaration, Debtor represents that she did not participate in the settlement discussions between the Trustee and Mr. Arakelyan and that she relied on information

provided to her by Mr. Arakelyan about those settlement discussions. Debtor allegedly believed

that her execution of the Deed would effectuate a settlement with the Trustee by enabling Mr.

Arakelyan to refinance the debt encumbering the Wilkinson Avenue Property and then make a

sufficient settlement payment to the Trustee. If true, Debtor's alleged lack of intent to hinder or

delay the Trustee by executing the Deed would constitute a meritorious defense under 11 U.S.C.

§ 727(a) (2)(B).

### 2. Whether Debtor Has Set Forth a Meritorious Defense under 11 U.S.C. § 727(a)(4)

To bring a successful objection to chapter 7 discharge for a false oath under 11 U.S.C. §

727(a)(4), the Trustee must show that: (1) the debtor made a false oath in connection with the

case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath

was made fraudulently. *Retz*, 606 F.3d at 1197.

### a. Debtor Made a False Oath

Debtor's testimony provided at the March 19, 2025 meeting of creditors, i.e., that Mr.

Arakelyan lives in the Wilkinson Avenue Property and not with Debtor in the Ben Avenue

Property, is contradictory to Debtor's prior oath made in writing and filed with the Court. In the

Status Report (which is supported by the DIP Declaration, signed under penalty of perjury),

Debtor represents that she and her husband live together in one unit in the Ben Avenue Property.

Based on Debtor's statement, made under oath, that she and Mr. Arakelyan both live in a unit at

the Ben Property, Debtor's subsequent oath at the March 19, 2025 meeting of creditors that Mr.

Arakelyan actually has been residing in the Wilkinson Avenue Property since no later than 2017,

is false.

Debtor has not provided any explanation of why, when she was represented by counsel as

a debtor in possession, she stated, under oath in the Status Report (supported by the DIP

Declaration), that she and her husband lived together in a unit at the Ben Avenue Property, yet in 2025, after the Court converted the Bankruptcy Case, the Court determined that the Wilkinson Avenue Property likely has equity which could be used to provide a distribution to Debtor's creditors and the Trustee has attempted to administer the Wilkinson Avenue Property for the benefit of creditors, Debtor testified that her husband does not live in the Ben Avenue Property and she and her husband have separate residences.

### b.  False Statement Was Material

Because Mr. Arakelyan has filed a homestead declaration regarding the Wilkinson Avenue Property, whether Mr. Arakelyan resides with Debtor in the Ben Avenue Property or in the Wilkinson Avenue Property is material to the amount of nonexempt equity in the Wilkinson Avenue Property available for distribution to Debtor's creditors and the Trustee's administration of Debtor's bankruptcy estate.

### c.  False Statement Was Made Knowingly

In the Status Report, Debtor states that Debtor and her spouse live in one unit at the Ben Avenue Property and the other three units are rented for a combined monthly total rental income of $5,500.00. The DIP Declaration, filed with the Status Report, contains the following declarations of truthfulness:

I, Anush Araklyan [sic], declare:

I know the following facts to be true from my own personal knowledge, except those facts which are stated on information and belief and as to those facts I believe them to be true. I could and would competently testify under oath to the truthfulness of the following facts:

1. I am the Debtor in this pending case. As such, I have personal knowledge of the facts stated herein, and if call upon to testify thereto, I could and would do so competently and truthfully.

[. . .]

3. I have read the foregoing Status Report and the same is true and correct to the best of my knowledge.

[. . .]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and complete to the best of my knowledge. Executed in Los Angeles, on this 17th day of September, 2024.

DIP Declaration, p. 1. Debtor signed the DIP Declaration [doc. 29 in Bankruptcy Case].

During Debtor's meeting of creditors held in March 2025, under oath, Debtor stated that her husband has lived in the Wilkinson Property since no later than 2017. In Debtor's 2026 Declaration filed in support of the Motion (for which Debtor is represented by counsel), following Mr. Arakelyan's postpetition recordation of a homestead declaration for the Wilkinson Property, Debtor states that she lives alone in the Ben Avenue Property and her husband lives in the Wilkinson Avenue Property.

Debtor has deliberately and consciously made these statements.

### d.  Oath Was Fraudulent

To establish "fraudulent intent" pursuant to 11 U.S.C. § 727(a)(4)(A), a plaintiff must show that (1) debtor made the representation, (2) at the time the debtor knew it was false, and (3) debtor made the statement with the intention and purpose of deceiving creditors. *Retz*, 606 F.3d at 1198-99. Intent is usually proven by circumstantial evidence or inferences drawn from the debtor's conduct. *Id*. at 1199.

In December 2024, after finding that Debtor was concealing her income and monthly expenses from the Court and creditors, the Court converted the Bankruptcy Case from chapter 11 to chapter 7. At that time, based on Debtor's sworn statements about her being the sole owner of a fee simple interest in the Wilkinson Avenue Property, Debtor's valuation of her scheduled

interest in that property and the amount of the claims secured by that property, the Court noted that the Wilkinson Avenue Property appeared to have substantial nonexempt equity which could generate a distribution to Debtor's unsecured creditors.

Before the Court converted the Bankruptcy Case, Debtor states in the Status Report that she and her husband live together in the Ben Avenue Property, Debtor's brother lives in the Wilkinson Avenue Property and Debtor's brother pays all of the expenses for the Wilkinson Avenue Property, including secured debt payments. Debtor filed her declaration in which she testifies that these statements are true. After the conversion of the Bankruptcy Case, and several meetings of creditors, Debtor substantially changed her prior sworn testimony about where Mr. Arakelyan lives.

Moreover, although Debtor now contends that she transferred an interest in the Wilkinson Avenue Property to Mr. Arakelyan many years prepetition (which transfer was never recorded), in Debtor's schedule A/B and amended schedule A/B, Debtor represents that she is the sole owner of a fee simple interest in the Wilkinson Avenue Property. Under penalty of perjury, Debtor declared that those schedules were true.

In Debtor's 2026 Declaration, Debtor does not provide an explanation as to why Mr. Arakelyan filed a homestead declaration for the Wilkinson Avenue Property in May 2025, i.e., months after the Court converted the Bankruptcy Case to chapter 7. *See* Exhibit 1 to Complaint. Mr. Arakelyan's filing of the homestead declaration followed several meetings of creditors, at which Debtor appeared and was asked to provide documents to the Trustee regarding the income generated by the Wilkinson Avenue Property. Debtor does not contest that she has failed to provide the Requested Documents to the Trustee; this is similar to Debtor's failure to provide

similar information in her monthly operating reports when Debtor was a debtor in possession and represented by bankruptcy counsel.

The contradictory representations made by Debtor about where Mr. Arakelyan resides, the timing of Debtor's revised representation that she lives alone in the Ben Avenue Property and her husband resides in the Wilkinson Avenue Property, and Mr. Arakelyan's recordation of a homestead declaration for the Wilkinson Avenue Property in May 2025 evidence that Debtor has made a false oath about the residence of Mr. Arakelyan with the intention and purpose of deceiving her creditors.

As a result, Debtor has not set forth a meritorious defense to Trustee's claim under 11 U.S.C. § 727(a)(4)(A).

### C.  Prejudice

Trustee contends that he will suffer prejudice if the Motion is granted because the estate will incur expenses to litigate the Complaint. In addition, the Court's adjudication of this adversary proceeding will be delayed by Debtor's lack of on-going legal representation. However, these circumstances do not establish the necessary prejudice to deny a request to lift a default.

In nearly all cases in which a defendant seeks relief from an entry of default, and if the Court grants relief from default, a plaintiff will need to spend additional resources to prosecute the action. Furthermore, Debtor's potential lack of counsel in the future does not constitute a sufficiently prejudicial situation to deny Debtor relief from default.

However, in light of Debtor's culpable conduct and her lack of a meritorious defense to Trustee's claim under 11 U.S.C. § 727(a)(4)(A), the issue of prejudice is not by itself

determinative. Either of these factors is sufficient reason for the Court to refuse to set aside the default.

**IV.     CONCLUSION**

The Court will deny the Motion.

###

Date: March 3, 2026

Victoria S. Kaufman
United States Bankruptcy Judge